UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| CHAD LANDON MAY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JUUL LABS, INC., PHILLIP ROCKE, LLC, ) <br> BUCKSHOT VAPORS, INC., THE VAPING ) <br> RABBIT, LLC, BLACK NOTE, INC., ) <br> HOLDFAST VAPORS, LLC, DIRECT VAPOR, ) <br> LLC, E-JUICE VAPOR, INC., MARINA VAPE, ) <br> LLC, HOOKAH IMPORTS, INC., MIG VAPOR, ) <br> LLC, MIGHTY VAPORS, LLC, KILO ) <br> E-LIQUIDS, INC., VAPE WILD, LLC, DASH ) <br> VAPES, INC., MEO, INC., SCHWARTZ ) <br> E-LIQUID,LLC, CARTER ELIXIRS, INC., ) <br> SHENZHEN IVPS TECHNOLOGY CORP- ) <br> ORATION, LTD., ) <br> ) <br> Defendants. | Case No. 19-CV- |

## COMPLAINT

COMES NOW, Plaintiff, Chad Landon May, by and through his undersigned attorneys, and in support of his action against Defendants, JUUL LABS, INC., PHILLIP ROCKE, LLC, BUCKSHOT VAPORS, INC., THE VAPING RABBIT, LLC, BLACK NOTE, INC., HOLDFAST VAPORS, LLC, DIRECT VAPOR, LLC, E-JUICE VAPOR, INC., MARINA VAPE, LLC, HOOKAH IMPORTS, INC., MIG VAPOR, LLC, MIGHTY VAPORS, LLC, KILO E-LIQUIDS, INC., VAPE WILD, LLC, DASH VAPTES, INC., MEO, INC., SHWARTZ E-LIQUID, LLC, CARTER ELIXIERS, INC., and SHENZHEN IVPS TECHNOLOGY CORPORATION, LTD., alleges as follows:

JURISDICTION AND VENUE

1. Plaintiff is over 19 years of age and is a resident of the Northern District of Alabama.

2. Defendant JUUL Labs, Inc. is a domestic corporation organized and existing under the law of the State of California, doing business in the Northern District of Alabama.

3. Defendant Phillip Rocke, LLC is a limited liability company organized and existing under the laws of the State of California, doing business in the Northern District of Alabama.

4. Defendant Buckshot Vapors, Inc. is a domestic corporation organized and existing under the laws of the State of California, doing business in the Northern District of Alabama

5. Defendant The Vaping Rabbit, LLC is a limited liability company organized and existing under the laws of the State of California, doing business in the Northern District of Alabama.

6. Defendant Black Note, Inc. is a domestic corporation organized and existing under the laws of the State of California, doing business in the Northern District of Alabama

7. Defendant Holdfast Vapors, LLC is a limited liability company organized and existing under the laws of the State of California, doing business in the Northern District of Alabama

8. Defendant Direct Vapor, LLC is a limited liability company organized and existing under the laws of the State of Florida, doing business in the Northern District of Alabama.

9. Defendant E-Juice Vapor, Inc. is a domestic corporation organized and existing under the laws of the State of California, doing business in the Northern District of Alabama

10. Defendant Marina Vape, LLC is a limited liability company organized and existing under the laws of the State of California, doing business in the Northern District of Alabama.

11. Defendant Hookah Imports, Inc. is a domestic corporation organized and existing under the laws of the State of Arizona, doing business in the Northern District of Alabama.

12. Defendant Mig Vapor, LLC is a limited liability company organized and existing under the laws of the State of Florida, doing business in the Northern District of Alabama.

13. Defendant Mighty Vapors, LLC is a limited liability company organized and existing under the laws of the State of California, doing business in the Northern District of Alabama.

14. Defendant Kilo E-Liquids, Inc., is a domestic corporation organized and existing under the laws of the State of California, doing business in the Northern District of Alabama.

15. Defendant Vape Wild, LLC is a limited liability company organized and existing under the laws of the State of Texas, doing business in the Northern District of Alabama.

16. Defendant Carter Elixirs, Inc. is a domestic corporation organized and existing under the laws of the State of California, doing business in the Northern District of Alabama.

17. Defendant Dash Vapes, Inc. is foreign corporation organized and existing under the laws of a foreign country, doing business in the Northern District of Alabama.

18. Defendant MEO, Inc. is a foreign corporation organized and existing under the laws of a foreign country, doing business in the Northern District of Alabama.

19. Defendant Schwartz E-Liquid, LLC, is a limited liability company organized and existing under the laws of the State of California, doing business in the Northern District of Alabama.

20. Defendant Shenzhen IVPS Technology Corporation, Ltd. is a foreign corporation organized and existing under the law of a foreign country, doing business in the Northern District of Alabama.

## FACTUAL BACKGROUND

21. An electronic cigarette, or e-cigarette, is a device that is used to inhale or "vape" flavored e-liquids containing nicotine and other dangerous chemicals, such as those produced by Defendants.

22. Plaintiff began utilizing an e-cigarette with flavored e-liquids in 2015 when he was approximately 16 years of age, when electronic cigarettes and e-liquids were unregulated, as a "safe" alternative to smoking cigarettes.

23. Defendants are manufacturers of electronic cigarettes and e-liquids, which are used in electronic cigarettes for the purpose of "vaping". Defendants' products contain hazardous chemicals including, but not limited to, diacetyl ("SA") and acetyl propionyl ("AP") (also known as 2,3-pentanedione), in addition to propylene glycol, glycerin, nicotine, and flavorings.

24. Inhalation of DA and AP is known to cause certain lung conditions/injuries including, but not limited to, Bronchiolitis Obliterans, an incurable condition which causes irreversible scarring to the lungs.

25. Defendants failed to adequately warn consumers, including Plaintiff, of the potential risk of harm associated with the use and inhalation of their products.

26. Defendants continued to manufacture and sell electronic cigarettes and e-liquids containing various amounts of DA and AP, depending on the flavor.

27. Defendants' electronic cigarettes and e-liquids also contain varying levels of nicotine, which is highly addictive.

28. Defendants have employed numerous methods to convey to consumers, including Plaintiff, their deceptive, false and misleading information concerning their electronic cigarettes and e-liquids.

29. As a result of Defendants' deceptive, false and misleading claims in its advertising, consumers, including Plaintiff, have purchased Defendants' e-liquids without being advised that they were highly addictive and contained hazardous toxic chemicals and posed a serious health risk.

30. Defendants' products, with their attractive names and packaging, were heavily marketed toward youthful consumers.

31. Due to the allure of the false and misleading advertising of Defendants, Plaintiff began vaping at the age of 16 years.

32. Plaintiff purchased Defendants' electronic cigarettes and e-liquids from local retailers.  Had Plaintiff known of the potential risks associated with use of these products, he would not have purchased Defendants' e-liquids.  As a result of Defendants' deceptive claims and/or omissions, Plaintiff suffered injuries.

33. Plaintiff was a heavy "vaper" and used several bottles of e-liquids per month.

34. During the three (3) years that Plaintiff used Defendants' e-liquids, he tried a variety of flavors manufactured by Defendants.

35. Defendants' products are sold in hundreds of retail locations throughout the United States and on the internet.

36. Plaintiff alleges that, upon information and belief, at all times relevant hereto, Defendants' agents, employees, representatives, executives, directors, partners and/or subsidiaries were acting within the scope of such agency, employment, and representation, on behalf of Defendants.

37. On or about October 31, 2019, Plaintiff was admitted to the hospital and diagnosed with a spontaneous pneumothorax.

38. On or about November 2, 2019, the doctor performed a left thoracoscopy with resection of apical blebs on Plaintiff to determine the cause of his pneumothorax,

39. A biopsy of Plaintiff's left lung revealed that he suffered from Bronchiolitis Obliterans, also known as "popcorn lung", which is an incurable lung disease.

40. As a result of this serious lung disease, Plaintiff has suffered, and continues to suffer from acute and chronic breathing problems.

## COUNT I
## NEGLIGENCE

41. Plaintiffs incorporate by reference all other paragraphs of this Complaint, as if fully set forth herein.

42. At all times relevant to this action, Defendants had a duty to exercise reasonable care and to comply with the existing standards of care, in their preparation, design, research, development, manufacturing, inspection, labeling, marketing, promotion and sale of electronic cigarettes and flavored e-liquids, which Defendants introduced

into the stream of commerce, including a duty to ensure that users would not suffer from unreasonable, dangerous or adverse side effects.

43. At all times relevant to this action, Defendants had a duty to warn all consumers of the risks, dangers, and adverse side effects associated with the use of electronic cigarettes and flavored e-liquids.

44. At all times relevant to this action, Defendants knew or reasonably should have known that the electronic cigarettes and e-liquids were unreasonably dangerous and defective when used as directed, including but not limited to the following particulars:

   a. Commonly used anesthetics likely to be used in pain pumps were harmful to human and animal articular cartilage and that toxicity to cartilage increased with the duration of exposure;

   b. Use of pain pumps with continuously injected anesthetic in the shoulder joint space had not been approved by the FDA, and in fact had been specifically rejected by the FDA;

   c. Continuous injection of anesthetic through a catheter, directly into the shoulder, for two days or more, had not been adequately tested for safety or effectiveness; and

   d. The risk of narrowing of the joint space, chondrolysis and other serious post-operative problems associated with using pain pumps with continuously injected anesthetic as designed and instructed outweighed the possible benefits of such use.

45. Based on what they knew or reasonably should have known as described above, the Defendants deviated from principles of due care, deviated from the standard of care, and were otherwise negligent in one or more of the following particulars:
    a. In failing to conduct those tests and studies necessary to determine whether vaping e-liquids was dangerous and contraindicated for use;
    b. In failing to disclose to consumers that continuous use of electronic cigarettes and e-liquids may cause serious and permanent injury to the respiratory system;
    c. By failing to disclose to disclose to consumers that the electronic cigarettes and e-liquids contained toxic chemicals known to cause serious potentially fatal respiratory ailments ;
    d. By manufacturing electronic cigarettes and e-liquids containing toxic chemicals known to cause serious potentially fatal respiratory ailments; and
    e. By promoting electronic cigarettes and e-liquids products for use without complying with regulations set forth by the FDA.
46. At all relevant times, Defendants knew or reasonably should have known that the electronic cigarettes and e-liquids were unreasonably dangerous and defective when used as directed and designed, including but not limited to the following particulars:
    a. The toxic chemicals in the electronic cigarettes and e-liquids are harmful to consumers' respiratory systems;
    b. Use of electronic cigarettes and e-liquids for vaping, which was unregulated until May 2016, have never been by approved by the FDA; and

    c. Continuous use of electronic cigarettes and e-liquids has not been adequately tested for safety.

47. The product defects alleged above were a substantial contributing cause of the injuries and damages suffered by Plaintiff.

48. The injuries and damages suffered by Plaintiff were the reasonably foreseeable results of Defendants' negligence.

49. Had Defendants performed those tests and studies necessary to determine that electronic cigarettes and e-liquids containing toxic chemicals should not be ingested or vaped, Plaintiff would not have developed bronchiolitis obliterans and suffered the injuries and damages described with particularity, above.

50. As a direct and proximate cause of the Defendants' negligence, Plaintiff suffered permanent damage to his respiratory system, resulting in difficulty breathing, loss of respiratory function, restriction of physical activities.

COUNT II<br>STRICT LIABILITY

51. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

52. Plaintiff is in the class of persons that the Defendants should reasonably foresee as being subject to the harm caused by defectively designed electronic cigarettes and e-liquids insofar as Plaintiff was the type of person whom the intended to be used, particularly since Plaintiff was a former smoker, and particularly since Defendants purposely and aggressively targeted minors through advertising with attractive flavors and packaging.

53. Defendants, which are engaged in the business of selling these electronic cigarettes and e-liquids, manufactured and supplied electronic cigarettes and the e-liquids used in the electronic cigarettes and placed them into the stream of commerce in a defective and unreasonably dangerous condition such that the foreseeable risks exceeded the benefits associated with the design and/or formulation of the products.

54. The electronic cigarettes and e-liquids supplied to Plaintiff were defective in design and formulation and unreasonably dangerous when they left the hands of Defendants, the manufacturers and suppliers, and they reached the user and consumer of the products, including Plaintiff, without substantial alteration in the condition in which they were sold.

55. The electronic cigarettes and e-liquids manufactured by Defendants were unreasonable and dangerously defective beyond the extent contemplated by ordinary consumers, including Plaintiff, with ordinary knowledge regarding these products.

56. Defendants' electronic cigarettes and e-liquids were defective due to inadequate warning and/or inadequate clinical trials, *in vivo* and *in vitro* testing and study, and inadequate reporting regarding the results of such studies.

57. Defendants' electronic cigarettes and e-liquids were defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risk of injury from their electronic cigarettes and e-liquids and the e-liquids used in the electronic cigarettes, they failed to provide adequate warnings to consumers, including Plaintiff, and continued to promote the products as safe.

58. The product defects alleged above were a substantial contributing cause of the injuries suffered by Plaintiff. Specifically, the electronic cigarettes and e-liquids used

for vaping in an electronic cigarette caused Plaintiff to suffer a serious permanent injury to his respiratory system.

59. As a direct and proximate cause of the Defendants' negligence, Plaintiff suffered As a direct and proximate cause of the Defendants' negligence, Plaintiff suffered permanent damage to his respiratory system, resulting in difficulty breathing, loss of respiratory function, restriction of physical activities.

**WHEREFORE**, Plaintiff respectfully prays judgment as follows:

A. For compensatory damages against Defendants, in an amount to be proven at trial;

B. For exemplary and punitive damages against Defendants, in an amount to be proven at trial;

C. For the costs of this suit, including Plaintiff's reasonable attorneys' fees, costs, and expenses; and

D. For such further and other relief as the Court deems appropriate.

**Plaintiff Demands a Trial by Jury on all issues so triable**

Respectfully submitted,

*/s/ Michele E. Pate*
Michele E. Pate
Law Office of Michele E. Pate
P.O. Box 3391
Jasper, AL  35502
(205) 275-1700
mpatelaw@gmail.com

*Attorney for Plaintiff*

*/s/ Andrew C. Allen*
Andrew Allen (ASB-3867-E56A)
Law Offices of Andrew C. Allen, LLC
Of Counsel
Fulmer Schudmak, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
(205) 847-5199
aallen@fulmershudmak.com


/s/ *Frank Ozment*
Frank Ozment (ASB-7203-N73J)
Frank Ozment Attorney at Law, LLC
Of Counsel
Fulmar Schudmak, LLC
217 Country Club Park, Box 501
Birmingham, Alabama 35213
(205) 918-8905
frank@fulmershudmak.com

*Attorneys for Plaintiff*